David LINDER, et al., Plaintiffs,

v.

Adolfo CALERO–PORTOCARRERO,
et al., Defendants.

Nos. 94–146 SSH, 94–149 SSH.

United States District Court,
District of Columbia.

Nov. 24, 1998.

Ursala Werner, Powell, Goldstein, Frazer & Murphy, Washington, DC, for Plaintiffs.

AUSA W. Mark Nebeker, AUSA, Kimberly N. Brown, U.S. Attorney's Office, Washington, DC, for Defendants.

### MEMORANDUM ORDER

STANLEY S. HARRIS, District Judge.

Before the Court are plaintiffs' motions for reconsideration of the Court's June 12, 1998, Opinion and Order in Miscellaneous Nos. 94–146 and 94–149, the Central Intelligence Agency's ("CIA") response in Miscellaneous No. 94–146, and the Federal Bureau of Investigation's ("FBI") response in Miscellaneous No. 94–149.

Plaintiffs first request that the Court reconsider its conclusion that two of the eight categories of documents in plaintiffs' motion for an expanded search are beyond the scope of remand. Plaintiffs complain that "[a]lthough plaintiffs['] May 21, 1998 Reply to the [agencies'] Opposition[s] of May 13, 1998 explicitly details the points in time and documents of record by which plaintiffs' claims were preserved, the District Court's Opinion of June 12, 1998 declines to address the arguments put forth by plaintiffs." Pls.' Mot. for Reconsid. as to CIA, at 1–2; Pls.' Mot for Reconsid. as to FBI, at 1–2. The

Court assures plaintiffs that it did not ignore the arguments set forth in their replies—indeed the Court included a footnote in the June 12 Opinion to address the points raised in plaintiffs' replies.[1] *See Linder v. Calero–Portocarrero,* 180 F.R.D. 168, 173 n. 6 (D.D.C.1998) [hereinafter *"Linder II"*]. For plaintiffs' benefit, the Court reiterates that it agrees that plaintiffs' August 1995 motion for further relief did not waive their right to request a search for all eight categories of information. However, that motion did not include a request for all eight categories of information, only documents concerning the policies and practices of the contra organizations regarding civilians, the wounded, prisoners of war, and foreigners working in Nicaragua. Pls.' Mot. for Furth. Relief, at 1. When plaintiffs decided to appeal in these cases, they could have challenged this Court's 1994 rejection of plaintiffs' modified subpoena (encompassing the eight categories of documents). Plaintiffs, however, chose to appeal only the Court's refusal to expand the search to include information about the "human rights" policies and practices of the contra organizations. *See Linder v. Department of Defense,* 133 F.3d 17, 23 (D.C.Cir. 1998) (describing the scope of plaintiffs' challenge on appeal as addressing "the district court's December 1996 denial of his family's request to expand the scope of the subpoenas to include documents concerning the policies and practices of the contra organizations regarding civilians, the wounded, prisoners of war, and foreigners working in Nicaragua") [hereinafter *"Linder I"*]. In so doing, plain-

tiffs waived any objection to the Court's treatment of any other category of information, and the Court's December 1994 Order dealing with those categories became the law of the case. *See Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.,* 810 F.2d 243, 250 (D.C.Cir.1987); 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction § 4478 (1981).

Plaintiffs next dispute the Court's conclusion that, with the exception of category 7 of plaintiffs' requested expanded search, records responsive to plaintiffs' expanded search would be only marginally relevant.[2] Plaintiffs specifically complain about information in category 8 (concerning the contra organizations' command structure) and categories 5 and 6 (concerning the contra units and individuals whom plaintiffs believe to have participated in the attack on Benjamin Linder).

Contrary to plaintiffs' apparent understanding, the Court did not hold that category 8 information was not relevant. Rather, the Court concluded that category 8 was beyond the scope of remand; there was no need to address the relevance issue. *See Linder II* at 173. The Court also stands by its decision that information from categories 5 and 6 falling within the scope of remand would only be marginally relevant to plaintiffs' Florida litigation. This is particularly true because (1) the agencies' search in compliance with the modified subpoena of 1994 should have captured any documents directly relevant to Benjamin Linder's death falling

---

**1.** Nor did the Court "decline[] to address the proposal put forth by plaintiffs to lessen the [agencies'] burden[s]." Pls.' Mot. for Reconsid. as to CIA, at 2; Pls.' Mot. for Reconsid. as to FBI, at 2. Plaintiffs appear to be referring to their statement that "[o]ver the years, plaintiffs have repeatedly offered to meet with CIA representative to discuss a means to tailor the search to the record-keeping systems used by the agency." Pls.' Reply to CIA's Opp'n to Pls.' Mot. for Exp. Srch., at 1–2; Pls.' Reply to FBI's Opp'n to Pls.' Mot. for Exp. Srch., at 1–2. The Court did not ignore this suggestion; it concluded that the deficiencies in plaintiffs' requested expanded search went far beyond a difficulty in tailoring their search to the agencies' databases. The most glaring problems with plaintiffs' requested expanded search were plaintiffs' refusal to include reasonable time limitations and their request for information that already had been the

subject of a modified subpoena. *See Linder v. Calero–Portocarrero,* 180 F.R.D. 168, 174 & nn. 9–10 (D.D.C.1998). More detailed information about the agencies' databases could not have cured these defects.

**2.** The Court clarifies that, in reaching its decision regarding the request for an expanded search, the Court considered the relevance of the requested information to each of plaintiffs' three theories of liability, not just to the second two, as the Opinion may suggest. *See Linder II* at 176. Mention of the first theory of liability was inadvertently omitted in the Court's desire to make it clear that it considered the relevance of the information to the second two theories of plaintiffs' case—a point on which there was confusion during the previous appeal. *See id.* at 171 n. 4.

within categories 5 and 6, and (2) a search encompassing category 7 (which the Court ordered) should capture any other relevant documents also responsive to categories 5 and 6.[3]

Finally, plaintiffs object to the Court's decision to condition the CIA's response to the modified subpoena on their paying half of the reasonable costs of the search. Plaintiffs contend that "a conclusion as to costs is improper, or at least premature, as this court has neither given the parties an opportunity to submit evidence, nor articulated any findings of fact that would substantiate a determination as to whether the nonparty can more readily bear its costs than the requesting party." Pls.' Mot. for Reconsider. as to CIA, at 3 (internal quotation omitted). The Court disagrees. Even were plaintiffs to submit evidence demonstrating that they have meager financial resources, this would not change the Court's decision as to costs.[4] In concluding that the parties should split the costs of an additional search, the Court gave plaintiffs the benefit of the doubt and assumed that they had far fewer financial resources than the CIA. Splitting the costs is nonetheless appropriate because, in addition to keeping nonparties from "being forced to subsidize an unreasonable share of the costs of a litigation to which they were not a party," *United States v. Columbia Broadcasting Sys., Inc.,* 666 F.2d 364, 371 (9th Cir.1982), *cert. denied,* 457 U.S. 1118, 102 S.Ct. 2929, 73 L.Ed.2d 1329 (1982), Federal Rule of Civil Procedure 45's mandatory cost-shifting provisions promote the most efficient use of resources in the discovery process. When nonparties are forced to pay the costs of discovery, the requesting party has no incentive to deter it from engaging in fishing expeditions for marginally relevant material. Requesters forced to internalize the costs of discovery will be more inclined to make narrowly-tailored requests reflecting a reasonable balance between the likely relevance of the evidence that will be discovered and the costs of compliance.[5]

Accordingly, it hereby is

ORDERED, that plaintiffs' motions for reconsideration of the Court's June 12, 1998, Opinion and Order are denied. It hereby further is

ORDERED, that within 21 days of the date of this Memorandum Order, the parties shall file a joint statement in Miscellaneous No. 94–146 either (1) proposing a schedule for the retrieval, review, and processing of documents responsive to the search as modified, (2) informing the Court that plaintiffs plan to file objections to the CIA's cost estimate, and providing a proposed briefing schedule, or (3) suggesting a further reduction of the search or informing the Court of plaintiffs' intention to abandon any further searches in light of the cost.

SO ORDERED.

---

3. Even had the Court determined that the documents in categories 5 and 6 were more than marginally relevant, it still would have concluded that plaintiffs' request was overbroad, and thus would not have enforced plaintiffs' requested expanded search.

4. If plaintiffs believe that the cost estimate submitted by the CIA is unreasonable, they may file specific objections to the costs listed.

5. The cases cited by plaintiffs do not support their contention that plaintiffs must be excused from paying any of the costs of compliance if they are found to have meager financial resources. Plaintiffs' authority differs from the instant case in two important ways: (1) those cases were decided before the 1991 amendments to Rule 45, when an award of costs to a nonparty was discretionary, not mandatory, and (2) in each of the cited cases, the court determined that the nonparty had an interest in the litigation. *See, e.g., United States v. IBM,* 62 F.R.D. 507, 512 (S.D.N.Y.1974).